**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Matthew WRIGHT, Defendant–Appellant.**

No. 94–1379.

United States Court of Appeals, Seventh Circuit.

Argued July 7, 1994.

Decided Oct. 13, 1994.

Mark D. Stuaan, Asst. U.S. Atty., Indianapolis, IN (argued), for plaintiff-appellee.

Mark C. Webb, Indianapolis, IN (argued), for defendant-appellant.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Matthew Wright pleaded guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The district court applied several enhancements to Wright's offense level, including a two-level enhancement for obstruction of justice under Sentencing Guideline § 3C1.1. The district court also declined Wright's request for a downward departure for coercion and duress under Guideline § 5K2.12. The district court sentenced Wright to 210 months' imprisonment on the armed bank robbery conviction and imposed a consecutive term of 60 months' imprisonment based on the firearm conviction. Wright challenges his sentence, asserting that the district court should have departed downward for coercion and duress. Wright also contends that the district court's enhancement of his offense level for obstruction of justice is clearly erroneous. We affirm.

I.

On May 14, 1993, Wright and co-defendant John C. Smith entered the INB National Bank in Indianapolis, Indiana. Both men were armed with semi-automatic handguns. Wright approached a teller's counter, pointed his gun at the teller, and demanded money. The teller handed him $2,080 in cash, and Wright and John C. Smith left the bank. Both men entered a car waiting outside the bank occupied by co-defendants Rana Mayes and Arlendia Smith and Wright's two-year-old son. While driving away from the bank, the four adults realized they were being followed by the police. As the car approached the apartment shared by Wright and Arlendia Smith, Wright and John C. Smith jumped out of the car and entered a wooded area, leaving the money and guns in or near the car. Arlendia Smith and Mayes were immediately arrested. John C. Smith surrendered to police later that day, and Wright surrendered the following morning.

A grand jury returned a five-count indictment against Wright, John C. Smith, Mayes and Arlendia Smith. Wright was charged with (1) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (count one); (2) use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (count three); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count five). Wright pleaded guilty pursuant to a written plea agreement to counts one and three of the indictment. The district court granted the government's motion to dismiss the remaining count against Wright.

Shortly after his arrest and while in custody, Wright called Arlendia Smith (who had been released after her arrest and against whom charges were later dismissed) and left messages on her answering machine over several days. The government introduced the cassette tape which recorded the messages and a transcript of those messages, the

authenticity of which was undisputed, at Wright's sentencing hearing. Wright left the following messages on Monday, May 17, 1993:

> Treasy, get Tonya my radio, my clothes, my gym shoes and my wallet and that paper on the table. And I also know that you turned state's on me but I'll make sure you go down too Ba-by. Mac. [Monday, 2:53 p.m.]

> Treasy, you better talk to me. It's about seven, ... you need to talk to me. I don't know why you're doin' this.... Talk to me ... its [sic] very important that you do 'cause I don't know what they did ... (unintelligible) ... suicide block or what. Talk to me.... I want you to just talk to me.... Damn, what's the big deal? I know what you did already.... Talk to me, okay? Won't you please talk to me Treasy.... Damn, you're actin' like you should be ashamed.... I already know what you did, but I still wanna talk to you.... I don't know what's up with Freddie, what they done did to him or what bangin' his head into the truck an' all that stuff ... (unintelligible) ... suicide block. Crazy ass white boys.... You need to talk to me Treasy ... real.... [Monday, 8:52 p.m.]

"Treasy" was Wright's nickname for Arlendia Smith; "Mac" was Arlendia Smith's nickname for Wright. Sentencing Tr. at 22. The government also introduced a note written by Arlendia Smith. The note referred to a phone conversation on August 9, 1993 between Wright and Arlendia Smith in which Wright threatened to kill Arlendia Smith's brother as well as the other members of her family.

---

1. The district court found Wright to be a career offender under Guideline § 4B1.1 because Wright's armed bank robbery conviction involved a crime of violence, Wright was over eighteen years old at the time of its commission, and Wright had prior Illinois state convictions for (1) robbery (two counts) and unlawful restraint (two counts); and (2) armed robbery. *See* U.S.S.G. § 4B1.1.

2. Guideline § 5K2.12 provides:
   If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete

Wright's presentence investigation report ("PSR") recommended that Wright receive a two-level enhancement for obstruction of justice under Sentencing Guideline § 3C1.1. Wright objected to this recommendation. The PSR did not identify any information which would warrant a downward departure from the Guidelines. Wright objected to this and contended at his sentencing hearing that a downward departure was warranted for coercion and duress under Guideline § 5K2.12. Wright testified that unscrupulous drug dealers poisoned his sister with tainted drugs and that Wright later confronted them and destroyed their cocaine. Wright further testified that the drug dealers demanded the value of the destroyed cocaine, and he was unable to meet their demands. Wright presented evidence that his life was threatened and his property damaged as a result of his inability to pay the drug dealers.

The district court overruled Wright's objection to the recommended enhancement for obstruction of justice, declined to depart downward for coercion and duress under Guideline § 5K2.12, and found Wright to be a career offender under Guideline § 4B1.1.[1] The district court sentenced Wright to 210 months' imprisonment on the armed bank robbery conviction, a consecutive term of 60 months' imprisonment on the firearm conviction, and two concurrent terms of three and two years of supervised release for each conviction, respectively, upon release from imprisonment.

## II.

Wright first challenges the district court's refusal to depart downward under Guideline § 5K2.12.[2] We have no jurisdic-

---

defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship

tion to review a district court's discretionary refusal to depart downward from the Guidelines. *United States v. Gio,* 7 F.3d 1279, 1291 (7th Cir.1993); *United States v. Helton,* 975 F.2d 430, 434 (7th Cir.1992); *United States v. Poff,* 926 F.2d 588, 590 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). However, a district court's "decision not to depart is reviewable on appeal if it is the product of a conclusion that the judge lacks authority to depart." *Poff,* 926 F.2d at 591; *accord Gio,* 7 F.3d at 1291; *Helton,* 975 F.2d at 434. Such a decision is a purely legal conclusion. *Helton,* 975 F.2d at 434; *Poff,* 926 F.2d at 590–91. Wright asserts that the district court refused to depart under Guideline § 5K2.12 because it erroneously concluded that it had no authority to do so.

■ The transcript of the sentencing hearing indicates that the district court exercised its judicial discretion in refusing to depart downward under Guideline § 5K2.12.[3] The district court considered Wright's argument for a departure based on coercion and duress and reasoned that Wright's participation in the bank robbery was "entirely unreasonable even if in response to those threats that he contends were made to him," and that the threats "in no way" justified the conduct in which Wright had participated. The district court also stated that the threats were "from some other source totally unrelated to the bank robbery activity here," and concluded that there was "no reason" to depart under Guideline § 5K2.12. These statements indicate that the district court was aware of its

authority to depart and simply determined, in its discretion, that the evidence presented by Wright did not warrant departure. Wright's claim concerning the district court's refusal to depart downward under Guideline § 5K2.12 is therefore dismissed for lack of appellate jurisdiction.

## III.

■ Wright also challenges the district court's enhancement of his offense level for obstruction of justice under Guideline § 3C1.1. Guideline § 3C1.1 directs a district court to increase a defendant's offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Application Note 3 of the Commentary states that "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" are "examples of the types of conduct to which this enhancement applies." U.S.S.G. § 3C1.1 comment. (n. 3) (Nov. 1992). The government, at Wright's sentencing hearing was required to prove the existence of factors warranting an enhancement under Guideline § 3C1.1 by a preponderance of the evidence. *United States v. Hamm,* 13 F.3d 1126, 1129 (7th Cir.1994). We review a district court's finding that a defendant obstructed justice within the meaning of Guideline § 3C1.1 for clear error.[4] *United States v. Robinson,* 14 F.3d

and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

U.S.S.G. § 5K2.12 (Nov. 1992).

**3.** The district court explained its ruling as follows:

Having considered the evidence with respect to the [sic] that issue, the Court would find tentatively that there is no basis for departure under Section 5K2.12 for coercion or duress because the type of evidence that the defendant presents is that he was in generally financially poor circumstances and he feared threats and harm from some other source totally unrelated to the bank robbery activity here, and that even if all of those things that he contends happened to

him and that those things were directed at him because of some prior conduct on his part, in no way would they justify the conduct that he participated in this offense. His actions were entirely unreasonable even if in response to those threats that he contends were made to him.

So there would be no reason to depart under that particular section. So to the extent that the objection is reflected in paragraph 17 it would be overruled.

Sentencing Tr. at 58–59. Although the district court stated that its finding was "tentative," this ruling became final after the district court gave each party an opportunity to object to its findings. Sentencing Tr. at 59.

**4.** The district court explained its ruling as follows:

1200, 1203 (7th Cir.1994); *Hamm,* 13 F.3d at 1129–30; *United States v. Lawrence,* 951 F.2d 751, 756 (7th Cir.1991).

█ Wright asserts that the district court's finding is clearly erroneous because his telephone messages did not involve any threat of physical harm to Arlendia Smith. We reject this argument. We have held that an attempt to influence a witness improperly is an attempt to obstruct justice under Guideline § 3C1.1 even if the defendant did not threaten the witness. *United States v. Cherif,* 943 F.2d 692, 703 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). In *Cherif,* we upheld an enhancement under Guideline § 3C1.1 for a defendant who wrote a letter to a co-defendant which stated, falsely, "you don't know anything" about the subject matter of the prosecution. *Cherif,* 943 F.2d at 703. We reasoned that the letter was "a subtle and somewhat clever attempt" to tell the co-defendant, "Don't spill the beans." *Id.; see also Robinson,* 14 F.3d at 1203–04 (district court's enhancement under Guideline § 3C1.1 based on phone conversations in which the defendant repeatedly told a co-defendant not to let anyone "put words in your mouth" was not clearly erroneous); *United States v. Fozo,* 904 F.2d 1166, 1172 (7th Cir.1990) (affirming district court's upward departure under Guideline § 3C1.1 for a defendant who prepared a "script" for a co-defendant to use in his trial testimony). Other circuits also recognize that an attempt to influence a witness improperly without threatening the witness is a basis for an enhancement for obstruction of justice under Guideline § 3C1.1. *See, e.g., United States v. Larson,* 978 F.2d 1021, 1025–26 (8th Cir. 1992) (indirect attempts to manufacture testimony from witnesses); *United States v. Parsons,* 967 F.2d 452, 459 (10th Cir.1992) (requesting a co-defendant to retract testimony in exchange for obtaining a lawyer for the co-defendant).

To constitute obstruction it is necessary, however, that the attempt to influence be "improper," that is having a natural tendency to suppress or interfere with the discovery of truth. Wright's phone message to Arlendia Smith on May 17, 1993 at 2:53 p.m. in which he stated, "I also know that you turned state's on me but I'll make sure you go down too Ba-by," was an attempt to influence a co-defendant within the meaning of Application Note 3 of Guideline § 3C1.1. Wright acknowledges that this message informed Arlendia Smith that "if you testify against me, I will testify against you." What the message also implied, however, was that "if you do not testify against me, I will not testify against you." This was a clear invitation to Arlendia Smith to participate in a criminal conspiracy to obstruct justice. In our view, nothing more is required to warrant an enhancement under Guideline § 3C1.1.

Wright's subsequent message later that day in which he implored Arlendia Smith to talk to him was also an attempt to change her potential testimony to a form favorable to him. This message in itself might pose a close question since it is not facially an invitation to perjury. However, we may properly view it in context. In addition, the government presented evidence, which the district court considered, of a note written by Arlendia Smith referring to a telephone conversation on August 9, 1993 in which Wright threatened to kill Arlendia Smith's brother as well as the other members of her family. The district court's enhancement of Wright's offense level for obstruction of justice under Guideline § 3C1.1 therefore is not clearly erroneous.[5]

With respect to the question of obstruction of justice, having heard the tapes and other evidence related to that matter, I believe the evidence shows by a preponderance that the defendant ... did attempt to intimidate Ms. Arlendia Smith and affect her cooperation with law enforcement so that under Section 3C1.1 there was obstruction of justice and there should be an enhancement by two levels.
Sentencing Tr. at 74–75.

5. Since the district court did not clearly err in enhancing Wright's offense level under Guideline § 3C1.1, we need not address the government's alternative argument that any error by the district court was harmless because Wright was sentenced as a career offender under Guideline § 4B1.1. *See Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (An error is harmless "[i]f the party defending the sentence persuades the court of appeals that the district court would have im-

For the foregoing reasons, Wright's sentence is

Affirmed.

posed the same sentence absent the erroneous      factor.")